[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried on May 18, 1985 at New Canaan, Connecticut. The plaintiff has been a lifelong resident of this state. There are no children issue of this marriage. The evidence presented clearly indicated that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The plaintiff is 30 years old and enjoys good health. She recently has been operating a retail food business owned by the parties, and has demonstrated in the past that she is capable of earning a comfortable salary, having worked as a salesperson in the computer field.
The defendant is 32 years old and also has no health problems. He is currently employed as a salesman in the computer business and in the past has earned substantial income.
The evidence reveals that the defendant must assume the responsibility for the breakdown of the marriage. No explanation was offered by the defendant as to why he decided that he was no CT Page 370 longer interested in maintaining his marital relationship with the plaintiff.
This was a long trial covering a period of 11 days. The behavior of both parties since the institution of the present action can be charitably called immature, and it was that behavior that extended this hearing. The defendant, in particular, showed no respect for the plaintiff's rights or the orders of court entered pendente lite. This resulted in the trial becoming a crusade by the plaintiff to convince the court that the defendant should be punished for his behavior during the marriage and after it had broken down.
The court notes that the defendant has been taken to task for his behavior. He has been incarcerated, and the court has imposed a substantial penalty for his refusal to return jewelry and other personalty. In addition, it is not the purpose of the court to punish anyone when marital assets are distributed. Fault may be considered, but it is only one factor of many. In sum, the parties expended a great deal of effort and money, with limited assets at stake, to terminate their relationship.
The court has carefully considered the criteria set forth in Connecticut General Statutes Sections 46b-62, 46b-81 and46b-82 in reaching the decisions reflected in the orders that follow.
The following orders may enter:
1. The business owned by the parties and known as Tidewater on the Half-Shell shall be promptly sold. From the proceeds of sale, after the payment of commissions and closing costs, the following distribution shall be made:
a. Payment of the debts of the business, including artisans' bills;
b. Payment of the lien of the Mechanics and Farmers Bank in the approximate amount of $10,000.00;
c. Payment to the plaintiff's mother of her loan to the business in the amount of $9,500.00;
d. Payment of the debt to Bentley Partnership in the amount of $13,000.00;
e. The balance shall be distributed to the parties as follows: two-thirds (2/3) to the plaintiff, and one-third (1/3) to the defendant. CT Page 371
2. The escrow fund of the parties presently consists of approximately $10,000.00 and will be increased by $2,250.00 when additional rental income from their Rhode Island property is received. The entire fund shall be distributed as follows: If the payment due the Bentley Partnership can't be deferred until the sale of any of the parties' assets, then the fund shall be used to pay that debt. If the payment can be deferred or it has been made from the sale of an asset, then two-thirds (2/3) of the fund is awarded to the plaintiff, and one-third (1/3) is awarded to the defendant.
3. The marital residence located at 7 Roosevelt Avenue, Old Greenwich, Connecticut shall be sold. If the parties are unable to agree on the listing price, selling price or any of the details of sale, they may request the court for a hearing, and the court reserves jurisdiction to resolve any issues arising in reference to the sale.
a. Until the sale is completed, the plaintiff shall have exclusive possession of the premises. Until that event occurs, the defendant shall be responsible to satisfy the financial institution holding the first mortgage as to the payments required on that mortgage until the sale, and the defendant shall be responsible for the payments required by the bank. The defendant shall have the same responsibility as to the second mortgage on the premises. However, any payments not made by the defendant up to the time of closing of title, shall not be charged against his interest in the property, if any.
b. From the proceeds of sale, after the payment of any commissions, the two mortgages, and the usual closing costs, the following distribution shall be made:
1. Payment of the Visa/Mastercard lien in the approximate amount of $5,000.00;
2. Payment of the judgment held by Mechanics and Farmers Bank in the approximate amount of $12,400.00;
3. Payment of all of the obligations ordered paid from the sale of the business known as Tidewater on the Half-Shell, in the event that sale did not occur or if there were insufficient funds from the sale to cover the payment of all of the obligations. However, if the debts of that business, including artisans' bills were not paid from funds of the Tidewater sale, and this excludes the debt to the plaintiff's mother, those debts shall only be paid from the proceeds of sale of the marital residence if either the plaintiff or defendant was personally responsible on those obligations. CT Page 372
4. Payment of any remaining balance in the ratio of two-thirds (2/3) to the plaintiff, and one-third (1/3) to the defendant.
4. The parties' vacation home in Charlestown, Rhode Island shall be sold. The court reserves jurisdiction to decide any disputes concerning the terms or conditions of sale. Until the sale, the parties may alternate possession of the premises on a biweekly basis. The defendant shall have the responsibility of attempting to satisfy the financial institution holding the mortgage on the premises as to a payment arrangement on the mortgage until the sale occurs.
a. From the proceeds of sale, after the payment of the mortgage, any commissions and the usual costs of closing, the balance shall be distributed to the parties in the following ratio: two-thirds (2/3) to the plaintiff, and one-third (1/3) to the defendant.
5. All the artwork owned by the parties is awarded to the plaintiff. However, the defendant, at his own expense, shall have the damage to the artwork restored. This shall be accomplished by October 31, 1990. The plaintiff, at her option, may decline to have the defendant make the necessary repairs.
6. The defendant shall arrange for the limited partnerships held in his name to be held in both his name and the name of the plaintiff, with the plaintiff being designated as the owner of a seventy-five (75%) percent interest and the defendant as the owner of a twenty-five (25%) percent interest.
7. The plaintiff is awarded her IRA, her jewelry and furs. The defendant is awarded his IRA, his boat and motorcycles.
8. The furniture and furnishings located in the two properties of the parties shall be divided by agreement. If that method fails, the matter is referred to the Family Relations Office for an investigation and report. The court reserves jurisdiction to conduct a hearing on this issue, if necessary.
9. With the exception of the $9,500.00 business obligation to the plaintiff's mother, each party shall be solely responsible for the repayment of any funds advanced by his or her parents. Each party shall indemnify and hold harmless the other from any claims brought by his/her parents against the other party.
10. The court finds that there is an arrearage due from the defendant from the pendente lite orders. It consists of the defendant's failure to pay a utility charge and failure to make mortgage payments on the two properties owned by the parties. CT Page 373
a. The mortgage payments due and unpaid total $19,000. In view of the fact that the court has awarded the defendant a one-third interest in both properties, then his failure to pay the mortgage payments only reduced the plaintiff's equity by two-thirds of the amounts unpaid. Therefore, the court finds that the defendant owes the plaintiff two-thirds of the $19,000.00 or $12,667.00.
b. In addition, the defendant owes a pendente lite order for payment of a phone service charge in the amount of $160.00. Therefore, the court finds as a total arrearage due the sum of $12,827.00.
11. In January, 1990, pursuant to a contempt motion filed by the plaintiff, the court ordered the defendant to return certain jewelry and other personal property to the residence of the parties. The order provided that if it was not done by a date certain, the plaintiff was to obtain appraisals, at the defendant's expense, of the value of the items involved. This alternate method was required. The order further provided that any payments made to the plaintiff would not be charged against her share of the marital estate.
a. The court received evidence as to the value of the items removed. The court is aware of the inherent difficulty in appraising jewelry without having it to examine. However, as pointed out by the plaintiff, this problem was created by the defendant
b. It is the court's interpretation of the January order that the defendant was to return the items so that they could be included in the marital estate for distribution. Therefore, the court has taken the value of the items removed in the amount it finds below and included it in the estate for distribution. It has concluded, after a consideration of the appropriate statutory criteria, that the plaintiff is entitled to two-thirds (2/3) of the value found by the court.
c. The court finds that the value of the items not returned by the defendant is as follows:
1. Jewelry $42,090.00
 2. Silver and crystal 3,212.00
Total $45,302.00
d. The court finds that the plaintiff, who testified CT Page 374 that the remaining items not returned had a value of between $7,500.00 and $10,000.00, has failed to sustain her burden of proof as to the value of those items. Therefore, the court reluctantly can ascribe no value to those pieces of personalty.
e. The court finds that appraisers' fees of $900.00 were incurred.
f. The court finds that pursuant to the January, 1990 order of the court, the defendant owes the plaintiff the sum of $30,200.00 (2/3 of $45,302.00) and the sum of $900.00 for appraisers' fees for a total of $31,200.00.
12. As found in paragraph #10, the defendant owes the plaintiff an arrearage of $12,827.00. Further, as found in paragraph #11, the defendant owes the plaintiff the sum of $31,200.00. This makes a total due of $44,027.00.
a. As security for the payment of this obligation, the defendant shall execute appropriate documents giving the plaintiff a security interest in the defendant's share of the limited partnerships. Further, as permitted by law, the defendant shall provide the plaintiff with a security interest against the IRA owned by the defendant. As the defendant's obligation is reduced, the plaintiff shall reduce her security interests to cover just the balance due her.
b. Payment of the obligations shall first be credited to the arrearages due and then to the remaining amount.
c. Commencing September 1, 1990, the defendant shall start making payments to the plaintiff at the rate of $1,000.00 per month, payable without interest, on the first day of each month until the obligation is fully paid.
d. If the Tidewater on the Half-Shell business is sold, all of the defendant's share of the proceeds, if any, shall be paid to the plaintiff to reduce the balance due the plaintiff.
e. When the marital residence is sold, and there is any distribution available to the defendant, the first $5,000.00 of the defendant's interest shall be his and any balance shall be turned over to the plaintiff to reduce the amount due her.
f. When the limited partnerships owned by the parties mature, or if the plaintiff, at her election, decides to sell them, then the funds received for the defendant's interest shall be applied to any balance due the plaintiff.
13. In view of the fact that the plaintiff is currently CT Page 375 unemployed and will require time to reorganize her life and home her employment skills, the court finds that periodic alimony is appropriate. Therefore, commencing August 1, 1990 and continuing until the death of either party, the plaintiff's remarriage or July 31, 1992, whichever event first occurs, the defendant shall pay to the plaintiff as periodic alimony the sum of $1,000.00 per month, payable in advance. A contingent wage withholding order may issue.
a. For the month of July, 1990, the pendente lite alimony order shall remain in effect.
14. Each party shall pay his and her own counsel fees.
15. The plaintiff's maiden name of Sturges is ordered restored.
Judgment may enter accordingly.
NOVACK, J.